HON. STANLEY A. BASTIAN

WILLIAM C. SCHROEDER
**KSB LITIGATION, P.S.**
510 W. Riverside Avenue, Ste 300
Spokane, WA 99201
(509) 624-8988

MICHAEL G. MCQUILLEN
NICHOLAS J. AJELLO
CHRISTOPHER J. RAISTRICK
**ADLER MURPHY & McQUILLEN, LLP**
20 S. Clark St., Ste. 2500
Chicago, Ill. 60603
*Attorneys for Defendant*
*The Moody Bible Institute of Chicago*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| YUKI LEE, in her capacity as personal representative of the Estate of her deceased husband, JOOCHAN LEE, individually and Decedent's surviving wife, and in her capacity as Guardian of their minor daughter, A.L. both as beneficiaries and heirs of Decedent's estate,<br><br>      Plaintiffs,<br>vs.<br><br>THE MOODY BIBLE INSTITUTE OF CHICAGO, and Illinois corporation,<br><br>      Defendant. | No. 2:19-cv-00326-SAB<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>*Without Oral Argument*<br>March 4, 2022 |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

## I.  MOTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56, Defendant, The Moody Bible Institute of Chicago ("Moody Bible"), moves the Court for summary judgment. Specifically, Moody Bible seeks enforcement of the Moody Aviation Flight and/or Maintenance Activities Covenant Not to Sue, Liability Release, and Assumption of Risk Agreement. [See Fact # 9]

## II.  INTRODUCTION

This case arises out of a fatal airplane accident that occurred on July 13, 2018, near Deer Park, Washington. Moody Bible owned and operated Moody Aviation, which provided training for its students to become missionary pilot mechanics. Plaintiffs' Decedent, Joochan Lee ("Mr. Lee"), was enrolled as a student in Moody Bible's aviation program.

Prior to participating in the aviation program, Mr. Lee signed the Moody Aviation Flight and/or Maintenance Activities Covenant Not to Sue Liability Release, and Assumption of Risk Agreement ("Release") in which Mr. Lee expressly agreed to release Moody Bible from any injury, death, or damages to him, his family, estate, heirs, or assigns that may occur during his participation in the aviation program as a result of the negligence of Moody Bible.

Washington courts have frequently upheld these types of pre-injury release agreements for potentially hazardous activities where the release does not violate public policy, the alleged negligent act does not fall greatly below the standard established by law for protection of others, and the clause is conspicuous. Plaintiffs' Complaint must be dismissed, and summary judgment entered in favor of Moody Bible.

### III. STATEMENT OF FACTS

This matter arises out of a fatal airplane accident that occurred on July 13, 2018. Mr. Lee was a passenger on the subject aircraft at the time of the accident. On August 29, 2019, Plaintiffs filed a Complaint for Wrongful Death against Moody Bible. Plaintiffs alleged Moody Bible was negligent in that "it did not maintain, upgrade, and operate the plane in the manner a reasonably prudent flight school ought to have done." [See Fact # 1] There are no allegations of gross negligence. [Id.] As confirmed by Plaintiffs' liability expert, "the cause of the crash was a bird strike." [See Fact # 2]

On September 30, 2019, Moody Bible filed its Answer and Affirmative Defenses whereby it denied all substantive allegations against it. [Fact # 5] In its Answer and Affirmative Defenses, Moody Bible admitted it owned and operated Moody Aviation and alleged that "Plaintiffs' decedent assumed the risk of participating in flight

activities, covenanted not to sue, and expressly waived liability as to Moody Bible and its respective employees." [Fact ## 6 – 8]

Mr. Lee was enrolled as a student in Moody Bible's aviation program seeking a degree in Aviation Technology as a pilot. [Fact # 7] Prior to the subject accident, Mr. Lee agreed to the terms and conditions contained in the Moody Aviation Flight and/or Maintenance Activities Covenant Not to Sue, Liability Release, and Assumption of Risk Agreement. [Fact # 9]

Mr. Lee voluntarily agreed to release, waive, and hold harmless Moody Bible from any claim, demand or lawsuit by him, his family, estate, heirs, or assigns, arising out of his participation in flying aircraft, flying in aircraft, and flight instruction ("Aircraft Activities"), including claims arising during any course of training or after he received his pilot certification or arising from being a passenger incident to Aircraft Activities, for any injuries, including death, and for any loss or damage to property related to his participation in Aircraft Activities. [Fact # 10]

In the Release, Mr. Lee affirmed that he was "aware that flying and maintenance activities associated with them have inherent and unforeseeable risks which may occur in serious injury or death." He further affirmed and agreed that Moody Bible "shall NOT be held liable or responsible in any way for any injury, death or damages to me, my family, estate, heirs, or assigns that may occur as a result of

or related to my participation in flying aircraft, flying in aircraft, flight instruction … or as a result of the negligence of any party, including [Moody Bible and the related] Released Parties, whether passive or active, direct or indirect." [Fact ## 11 – 12]

Plaintiff Yuki Lee is the widow of Joochan Lee. [Fact # 13] Both A.I. and Yuki Lee are heirs to Joochan Lee. [Fact # 14] During her deposition, Ms. Lee was shown the subject Release. Ms. Lee testified that she was familiar with Mr. Lee's signature. [Fact # 15] She further testified that the signature depicted on the Release appeared to be that of Mr. Lee. [Id.]

## IV. LEGAL STANDARD

A party is entitled to summary judgment if the "movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001).

"[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "This does not mean

that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record." *Schmahl v. Macy's Dep't Stores, Inc.*, 2010 U.S. Dist. LEXIS 77294, at 8 – 9 (E.D. Wash. July 30, 2010). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## V. ARGUMENT

### A. The Moody Aviation Release is Enforceable.

The Washington Supreme Court has recognized the right of parties "expressly to agree in advance that the defendant is under no obligation of care for the benefit of the plaintiff, and shall not be liable for the consequences of conduct which would otherwise be negligent." *Wagenblast v. Odessa Sch. Dist.*, 110 Wn.2d 845, 848 (1998). "Exculpatory clauses in preinjury releases are strictly construed and must be clear if the exemption from liability is to be enforced." *Vodopest v. MacGregor*, 128 Wn.2d 840, 848 (1996). The "general rule in Washington is that exculpatory clauses are enforceable unless (1) they violate public policy, or (2) the negligent act falls greatly below the standard established by law for protection of others, or (3) they are inconspicuous." *Vodopest*, 128 Wn.2d at 848 (*citing Scott v. Pacific W. Mountain Resort*, 119 Wn.2d 484, 492 (1992)).

## B. The Moody Aviation Release Does Not Violate Public Policy.

The Washington Supreme Court has identified six nonexclusive factors commonly present in releases that violate public policy. *Wagenblast v. Odessa Sch. Dist.*, 110 Wn.2d at 848. Under *Wagenblast*, the enforceability of a release depends on whether: (1) the agreement concerns an endeavor of a type thought suitable for public regulation; (2) the party seeking to enforce the release is engaged in performing an important public service, often one of practical necessity; (3) the party provides the service to any member of the public, or to any member falling within established standards; (4) the party seeking to invoke the release has control over the person or property of the party seeking the service; (5) there is a decisive inequality of bargaining power between the parties; and (6) the release is a standardized adhesion contract. *Wagenblast*, 110 Wn.2d at 852 – 56. "[T]he more of the . . . six characteristics that appear in a given exculpatory agreement case, the more likely the agreement is to be declared invalid on public policy grounds." *Wagenblast*, at 852.

A common thread runs through cases in which exculpatory agreements have been found to be void as against public policy. That "common thread is they are all essential public services – hospitals, housing, public utilities, and public education." *Shields v. Sta-Fit*, 79

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

Wn. App. 584, 589 (1995). "[A] survey of cases assessing exculpatory clauses reveals that the common determinative factor for Washington courts has been the services' or activities' importance to the public." *Vodopest*, 128 Wn.2d at 858.

Considering the *Wagenblast* factors, it is clear the Release in this case does not violate public policy. Although it appears that Washington courts have not yet addressed the validity of exculpatory clauses in the context of flight training, they have consistently upheld exculpatory agreements in the setting of adults engaged in potentially hazardous elective activities.[1] *See Blide v. Rainier Mountaineering, Inc.*, 30 Wn. App. 571 (1981) (mountain climbing); *Boyce v. West*, 71 Wn. App. 657 (1993) (scuba diving); *Chauvlier v. Booth Creek Ski Holdings, Inc.*, 109 Wn. App. 334, 33 (2001) (skiing); *Conradt v. Four Star Promotions, Inc.*, 45 Wn. App. 847 (1986) (automobile demolition derby); *Hewitt v. Miller,* 11 Wn. App. 72 (1974) (scuba diving); *Johnson v. Spokane to Sandpoint, LLC*, 176 Wn. App. 453 (2013) (long-distance relay race); *Garretson v. United States*, 456 F.2d 1017 (9th Cir. 1972) (ski jumping).

---

[1] The Illinois Court of Appeals has enforced an exculpatory clause in a matter where a pilot was killed during training exercises. *Evans v. Lima Lima Flight Team, Inc.*, 3373 Ill. App. 3d 407 (1st Dist. 2007) (finding no violation of public policy despite acknowledgement of regulations related to air safety).

*Boyce* is instructive here. In *Boyce*, the plaintiff filed a wrongful death action arising out of a scuba diving accident. The decedent was a student at Gonzaga University. He was enrolled in Scuba Diving 2, which was taught by a Gonzaga adjunct professor. *Boyce*, 71 Wn. App. at 660 – 61. Prior to taking the class, the decedent signed an "Affirmation and Liability Release." *Id.* at 661. Decedent died while diving during one of the classes. His mother, as personal representative of her son's estate, sued the instructor and Gonzaga University for wrongful death. *Id.* Defendants moved for summary judgment on the grounds that the decedent released the defendants' liability, and the motion was granted.

In affirming the trial court's order granting the motion, the Court of Appeals of Washington acknowledged the *Wagenblast* factors. The Court found that the factors did not favor a finding that the exculpatory clause violated public policy. *Boyce*, 71 Wn. App. at 664. Consequently, the court held that it did "not find a public interest in a private school offering scuba diving instruction to qualified students as an elective course. Upholding the release of Gonzaga does not violate public policy." *Id.*

The decedent in *Boyce* and Mr. Lee are similarly situated individuals who were engaged in similar activities. Like the decedent in *Boyce*, Mr. Lee was a student at a private university when he executed a liability waiver to enroll in a class and/or program of study

that involved inherent risks. Further, like scuba diving, flight training is not an essential public service. Unlike cases where exculpatory clauses were found to violate public policy, Moody Bible was not a common carrier, an innkeeper, a professional bailee, a public utility, or the like, and did not provide services related to medical treatment, housing, public utilities, or public education. *See Wagenblast*, 110 Wn.2d at 849 – 50.

Thus, while flight schools are regulated, Washington courts applying the *Wagenblast* factors to similar endeavors demonstrate that the Moody Bible Release must be enforced here. In *Petersen v. Sorensen*, 2003 Wash. App. LEXIS 1894 the plaintiff alleged she was injured when she lost control of the motorcycle she was driving during a motorcycle training course. Prior to taking the course, the plaintiff executed a registration that included an exculpatory clause. *Peterson*, 2003 Wash. App. LEXIS at *1. Despite regulation of motorcycle training by the Washington State Legislature and the Washington Department of Licenses, the court enforced the exculpatory clause. *Id.* at *9. The court held the enforcement of an exculpatory clause in the provision of motorcycle training did not violate public policy. *Id.* at *22. In doing so, the court reasoned that although motorcycle training was regulated, not a purely recreational activity and "of interest to the public [it] cannot be

considered of great importance to the public, or a practical necessity . . ." *Id.* at \*\*16, 19.

As discussed above, flight training, particularly through a private university, is not an essential public service. Moody Bible does not have control over Mr. Lee, and there is no inequality of bargaining power between Moody Bible and Mr. Lee. Moody Bible does not have the "near monopoly power" that the school districts had in *Wagenblast*. Mr. Lee could have attended another university or another flight school. And as discussed above and below, the Moody Aviation Release is not a standardized adhesion contract, but instead is a one-page, conspicuous, standalone agreement. The *Wagenblast* factors and application of those factors by Washington courts require enforcement of the Moody Aviation Release.

**C. Moody Bible's Alleged Negligent Act Does Not Fall Greatly Below the Standard Established by Law for Protection of Others.**

A preinjury waiver and release will not exculpate a defendant from liability for damages resulting from gross negligence. *Vodopest*, 128 Wn.2d at 848. "Gross negligence" is "negligence substantially and appreciably greater than ordinary negligence," i.e., "care substantially or appreciably less than the quantum of care inhering in ordinary negligence." *Nist v. Tudor*, 67 Wn. 2d 322, 331 (1965). "Since a release of liability exculpates ordinary negligence, if it

occurs, the plaintiff must establish gross negligence affirmatively to avoid enforcement of the release." *Boyce v. West*, 71 Wn. App. at 665.

Here, Plaintiffs have not alleged gross negligence in the Complaint. Rather, Plaintiffs allege Moody Bible was negligent in that "it did not maintain, upgrade, and operate the plane in the manner a reasonably prudent flight school ought to have done." [Fact # 3] Plaintiffs' expert opined, and Moody Bible agrees, that the crash was caused by a bird strike. [Fact # 2] Plaintiffs have not alleged and cannot establish gross negligence to avoid the enforcement of the release.

**D. The Moody Aviation Release is Conspicuous.**

"A liability waiver provision is not enforceable if the releasing language is 'so inconspicuous that reasonable persons could reach different conclusions as to whether the document was unwittingly signed.'" *McCoy v. PFWA Lacey, LLC*, 2021 Wash. App. LEXIS 1208, ¶ 18 (*quoting Johnson v. UBAR, LLC*, 150 Wn. App. 533, 538 (2009)).

Courts look to several factors in deciding whether a liability waiver provision is conspicuous including: (1) whether the waiver provision is set apart or hidden within other provisions, (2) whether the heading or caption of the provision is clear, (3) whether the waiver provision is set off in capital letters or in bold type, (4) whether there is a signature line below the waiver provision, (5) what the language says above the signature line, and (6) whether it is clear

that the signature is related to the waiver provision. *McCoy v. PFWA Lacey, LLC*, 2021 Wash. App. LEXIS 1208, ¶ 19; *see also Baker v. City of Seattle*, 79 Wn.2d 198, 202 (1971). "Essentially, if the waiver provision is hidden, *i.e.* inconspicuous, it is unenforceable." *McCoy*, 2021 Wash. App. LEXIS at ¶ 20.

Here, the Release is conspicuous. The Release is a one-page, standalone document. The caption is clear and reads, "Moody Aviation Flight and/or Maintenance Activities Covenant Not to Sue, Liability Release and Assumption of Risk Agreement. [Fact # 9] There is a signature line below the waiver provision and the language above the signature line reiterates that the signatory is waiving legal rights and assuming risks (see below).

> I understand the terms herein are contractual and not merely for recital and attest that I have signed this document of my own free act and with the knowledge that I am hereby waiving legal rights and assuming risks. I have fully informed myself of the contents of this Covenant Not To Sue, Liability Release and Assumption Of Risk Agreement by reading it before I signed it on behalf of myself and my heirs.
>
> _____  5/19/18
> Participant's Signature           Date
>
> _____  _____
> Parent or Guardian's Signature (*if applicable*)   Date
>
> DEP EX 3
> LEE, YUKI 11/19/21

Reasonable persons could not reach different conclusions as to whether the document was unwittingly signed. Consequently, the Moody Bible Release is conspicuous.

## VI. CONCLUSION

Moody Bible is entitled to summary judgment because Mr. Lee signed the Moody Bible Release and agreed that Moody Bible "shall NOT be held liable or responsible in any way" for any injury, death or damages related to those activities as a result of the negligence of Moody Bible. As demonstrated herein, the Release does not violate public policy as Moody Bible was not engaged in providing an essential public service and the release was not procedurally defective. Further, there are no allegations of gross negligence and the Release itself is conspicuous.

The Release is valid and enforceable. Moody Bible is entitled to summary judgment as to all claims against it.

Submitted this 10th day of January, 2022,

**KSB LITIGATION, P.S.**

By: /s/ *William C. Schroeder*
William C. Schroeder
**KSB LITIGATION, P.S.**
510 W. Riverside Avenue, Ste 300
Spokane, WA 99201
(509) 624-8988
wcs@KSBLit.legal

Michael G. McQuillen
Nicholas J. Ajello
Christopher J. Raistrick
**ADLER MURPHY & McQUILLEN, LLP**
20 S. Clark St., Ste. 2500

Chicago, Ill. 60603
mmcquillen@amm-law.com
najello@amm-law.com
craistrick@amm-law.com
*Attorneys for Defendant
The Moody Bible Institute of Chicago*