HON. STANLEY A. BASTIAN

Charles Herrmann, WSBA #6173
charles@hlg.lawyer
Anthony Marsh, WSBA #45194
anthony@hlg.lawyer
**HERRMANN LAW GROUP**
505 5th Avenue South, Suite 330
Seattle, WA 98104
P: 206-457-4204
F: 206-457-4205
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| YUKI LEE, in her capacity as personal representative of the Estate of her deceased husband JOO CHAN LEE and in her capacity as Guardian of their minor daughter, A.L., both as beneficiaries and the sole heirs of Decedent's estate,<br><br>Plaintiff,<br>vs.<br><br>THE MOODY BIBLE INSTITUTE OF CHICAGO, and Illinois corporation,<br><br>Defendant. | No. 2:19-cv-00326-SAB<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Comes now Plaintiff Yuki Lee, through her attorneys Charles Herrmann and Anthony Marsh of the **HERRMANN LAW GROUP,** to allege and complain against defendant as follows.

## I. NATURE OF ACTION

1.1 Plaintiff Yuki Lee (Yuki) seeks recovery of damages for wrongful death and personal injuries arising out of the death of her Decedent

husband, Joochan Lee (Joochan) in an air crash that occurred near the unincorporated community of Clayton, in Stevens County, Washington on July 13, 2018. The flight was exclusively conducted by agents of Defendant The Moody Bible Institute of Chicago's aviation college (Moody) in Spokane Washington.

## II. PARTIES

2.1 Plaintiff Yuki is Decedent Joochan's surviving widow. Yuki brings this complaint in her capacity as duly appointed Personal Representative of the Estate of Decedent Joochan Lee filed and pending under Spokane County Superior Court cause #19-401268-32. She is also the natural custodial mother and legal guardian of their minor daughter Plaintiff A.L. At the time of the air crash, Yuki was pregnant carrying A.L. who is now a three-year-old toddler.

2.2 Defendant Moody is an Illinois corporation. It maintains its corporate headquarters in Chicago, Illinois. Moody owns and operates a flight school in Spokane, Washington, which offers a Bachelor of Science degree designed to qualify graduates for, among several certifications, FAA commercial pilot licenses with instrument certifications. Moody is registered with the Secretaries of State in Illinois and Washington.

## III. JURISDICTION & VENUE

3.1 The matter in controversy exceeds $75,000.00.

3.2 Moody's ill-fated training flight departed Felts Field airport located within eastern city limits of Spokane, Washington. The air crash occurred approximately 23 miles northwest of Felts Field near the unincorporated community of Clayton in Stevens County, Washington. Joochan's estate is filed and pending in Spokane County Superior Court.

3.3 This Court has diversity jurisdiction under 28 U.S.C § 1332. Venue is proper in this court under 28 U.S.C § 1391.

FIRST AMENDED
COMPLAINT

2

## IV. FACTS

4.1 Moody's flight school is certified by the FAA. It offers a five-year curriculum that bestows upon its graduates a Bachelor of Science Degree in Missionary Aviation Technology. This degree trains students to qualify for a FAA commercial pilot license with instrument certification.

4.2 Enrollment at Moody's flight school is open to a large segment of the public. The sole limitation is that an applicant has been a practicing Protestant Christian for at least a year prior to enrolling. Tuition at Moody covers at least 325 hours of actual flight training including beginning flights wherein the aircraft is under command and control of one of Moody's Certified Flight Instructors (CFI) pilots training student passengers.

4.3 Joochan was enrolled as a student at Moody majoring in flight. He planned to first become a missionary pilot and then engage in a career as a commercial pilot.

4.4 As part of its enrollment process, Moody required Joochan to sign a classic adhesion waiver entitled "MOODY AVIATION FLIGHT AND/OR MAINTENANCE ACTIVITIES, *Covenant Not to Sue, Liability Release and Assumption of Risk,"* which purported to shield Moody from liability for any negligence. Yuki did not sign it, never gave Joochan authority to sign on her behalf, and was completely unaware of this form or that Moody had required Joochan to sign it.

4.5 Moody established 13 practice areas wherein its actual flight training takes place, 7 north of Felts Field, and 6 to the south. See: Exhibit 1 Moody Practice Areas map attached.

4.6 This training flight was to take place in Moody's "Clayton" practice area, the approximate center of which lies about 26 miles northwest of Felts Field. See: Ex. 1 filed herewith.

4.7 The Clayton practice area contains or is near lakes, rivers, reservoirs and other freshwater features that, especially in July, are known to be nesting and foraging waters for squadrons of American White Pelicans during their summer migration south to their winter habitats. These birds breed primarily on isolated islands in lakes, rivers, reservoirs and other freshwater features. They forage mainly in shallow areas of these water features. White pelicans are limited by the availability of remote nesting sites and rich foraging habitats in freshwater features. Their presence in the many lakes, rivers, and other freshwater features in and near Moody's Clayton practice area reaches a sharp peak annually every July, on average many times more than any other month.

4.8 These Pelicans are the second largest flying bird native to North America. They average 50-70 inches in length, a wingspan of 8 to 10 feet, and weigh 10-17 pounds with some as large as 30lbs. They fly as high as 10,000 feet. They nest on isolated islands in freshwater lakes with a daily foraging range that can exceed 50 kilometers (31 miles).

4.9 The danger these large birds represent to air safety is well documented and widely known throughout the aviation industry. The first reported birdstrike occurred on September 7, 1905, while Orville Wright was flying over a cornfield in Ohio. Hundreds of human injuries and deaths have occurred in the last 34 years. Bird strikes cause death and personal injuries to humans as well as hundreds of millions of dollars of damage to aircraft each year. Both FAA and U.S. Fish and Wildlife Service issue bird strike warnings and guidance to avoid, whenever practical, scheduling flights where large birds such as these are present in substantial numbers.

4.10 Upon information and belief, despite readily available information, neither the pilot CFI Senn nor any of his superiors at Moody knew that considerable numbers of these enormous Pelicans were present in or near

the Clayton practice area, sharply peaking in July each year. Moody undertook no investigation regarding presence of large birds within their practice areas. The Pelicans' presence was not discovered nor were they even considered in locating this ill-fated flight.

4.11 In the alternative, if Moody did know that these birds were present in extraordinary numbers in the month of July, Moody simply disregarded the danger these birds posed. They sent this flight into their Clayton practice area at the peak of these birds' seasonal presence in July of 2018.

4.12 Moody did not consider rescheduling training flights to avoid the drastically increased danger during the July peak of Pelicans presence.

4.13 Moody also did not consider another practical alternative. A large swath of dry land, void of water features capable of providing these Pelicans with nesting or foraging water sights lies directly south of Felts Field towards the town of Palouse. This area, nearly void of all habitats American White Pelicans require, provided a far safer alternative area for Moody to conduct its training flights in July. It constituted a second reasonable and eminently practical alternative.

4.14 Nevertheless, on July 13, 2018, Joochan began his first actual flight training lesson. He had never before flown an aircraft. Joochan was a student passenger seated in the left front seat of the aircraft, a Cessna 172 R "Skyhawk," manufactured in year 2000 with registration #N24442. The plane and flight were under command and control of Diego Senn, a Certified Flight Instructor (CFI) employed by Moody. Mr. Senn had received his CFI license 6 months before on January 14, 2018.

4.15 Andrew Trouten, a fellow student at Moody, was seated in a back seat as a voluntary passenger/observer.

4.16 The flight departed Felts Field at approximately 9:55 a.m. on July 13, 2018. Weather was clear with 10 miles of visibility. Temperature was

28 C / 82.4 F. Wind was a mild 4 knots at 110° SE. The last recorded track data at 10:21:18 indicated ground speed of 117 knots (135 mph).

4.17 Witnesses reported that they observed the airplane in a steep dive toward terrain when the wings broke off from the plane. Other witnesses report seeing the plane upside down, followed by a sudden turn vertical.

4.18 All three people onboard, trapped in a wingless fuselage, unable to maneuver, plummeted to their deaths upon impact with terrain below.

4.19 The plane crashed in a grass field of rural farmland near Clayton, about 23 miles northwest of Felts Field. The wreckage was distributed over 400 ft distance on a median magnetic bearing of about 030°.

4.20 Present among the debris at the wreckage sight was a small golf ball-sized tuft of white and light grey feathers, which were not preserved. Subsequent analysis conducted by the Smithsonian Institution's Feather Identification Lab of nine microslides taken from two bags of windscreen shard samples from the wreckage concluded feather fragments contained DNA consistent with American White Pelican.

4.21 It is virtually certain this air crash was caused by an American White Pelican striking the windshield of the plane.

## V. RESPONDEAT SUPERIOR

5.1 All acts and/or omissions by Defendant Moody were performed or omitted by authorized agents acting within the scope of their agency. Thus, under the doctrine of Respondeat Superior, Moody is vicariously liable for all their acts and/or omissions.

## VI. NEGLIGENCE

6.1 All above paragraphs are incorporated herein as fully set forth.

6.2 Moody failed to take any action to discover the presence of high numbers of *American White Pelicans* in and/or near its Clayton practice area seasonally peaking during the month of July. Or, in gross disregard

FIRST AMENDED COMPLAINT

6

of the Pelican's presence, Moody plunged ahead sending this ill-fated flight into the Clayton practice area infested with squadrons of these Pelicans.

6.3 As a direct result, Moody failed to reschedule its training flights to dates when these Pelicans were not present in such great numbers or, in the alternative, to redirect its training flights to a safer dry land area to the south of Felts Field where there were virtually no nesting or foraging water features present—where relatively few of these Pelicans would likely be present. Both alternatives would have been eminently practical.

6.4 Moody failed to exercise due care a reasonable operator of a flight school would exercise under like and similar circumstances. Moody's failures constitute breaches of duties Moody owed to Joochan.

6.5 First, Moody owed Joochan of a common carrier to exercise the highest care consistent with practical operation of its business as a flight school. Moody's failure to exercise such care constitutes negligence.

6.6 Second, Moody's failures certainly constitute ordinary negligence.

6.7 Moody's negligence violated the standards of care found in 14 CFR §91.13 CARELESS OR RECKLESS OPERATION and as recognized in 49 USCA §44701(d)(1)(A). GENERAL REQUIREMENTS. Further, the remedies for such negligence are reserved to the states by 49 USCA §401.20 RELATIONSHIP TO OTHER LAWS as found in RCW 4.020 *et seq*. specifying causes of action for wrongful death as well as survival actions as are more particularly alleged below.

6.8 Moody's negligence was the proximate cause of Joochan's death.

## VII. Exculpatory Form

7.1 Moody required Joochan to sign a classic adhesion exculpatory form entitled "MOODY AVIATION FLIGHT AND/OR MAINTENANCE ACTIVITIES *Covenant Not to Sue, Liability Release, and Assumption of Risk.*"

7.2 Moody owed Joochan the duty of care of a common carrier. This flight was an integral part of Moody's business as a flight school. Joochan paid tuition covering the flight—several hundred dollars per credit hour. He was indeed a paying patron. Attendance at Moody's flight school was open to a vast segment of the public. The only limitation was that applicants have been practicing Protestant Christians for at least a year. Exculpatory waivers are not effective to protect a common carrier from its negligence while carrying a paying patron.

7.3 Further, the exculpatory form Moody required Joochan to sign as part of his enrollment process was *void ab initio* as violative of public policy in that: (1) aviation safety is in fact highly regulated; (2) Moody's flight school provides a service of great importance to the public and is a practical necessity for anyone desiring to become a commercial pilot; (3) Moody holds itself out as willing to perform this service for a large segment of the public with the sole requirement that the applicant has been a practicing Protestant Christian for at least a year prior to enrolling; (4) Moody possessed a decisive advantage of bargaining strength against Joochan; (5) in exercising its bargaining advantage, Moody required Joochan to sign an adhesion contract of exculpation. It had no provision whereby Joochan could pay more fees for protection against Moody's negligence; and, (6) Joochan was under the control of the furnisher of the services, subject to risk of carelessness on the part of Moody.

7.4 Last, Yuki was unaware that Moody had required Joochan to sign an exculpatory waiver as of his attendance. She never consented to, nor did she ever authorize Joochan to waive any of her rights. Joochan did not have authority to waive any such rights on behalf of his wife nor their unborn daughter A.L. This exculpatory waiver was ineffective against Yuki and A.L.'s claims for wrongful death as hereinafter alleged.

7.5  Thus, such an attempted waiver is ineffective where the duty owed is that of a common carrier. Further, where the activity involves a vital public interest such as safety in commercial aviation including the proper training of commercial pilots, it is likewise void *ab initio* as against public policy. Last, Moody's form is ineffective against the claims of Yuki and A.L. who were never bound by its terms.

## VIII. JURY DEMAND

8.1 Plaintiff Lee demands trial by jury on all issues.

## IX. CAUSES OF ACTION

### A. First Cause of Action
*Wrongful Death*

9.1 All above paragraphs are incorporated herein as fully set forth.

9.2 RCWA 4.20.010 WRONGFUL DEATH—RIGHT OF ACTION grants Plaintiff Yuki Lee, in her capacity as Personal Representative of the Estate of Joochan Lee, a wrongful death cause of action against defendant whose wrongful acts were the proximate cause of Joochan's death.

9.3 RCWA 4.20.020 WRONGFUL DEATH—BENEFICIARIES OF ACTION provides that A.L., as Joochan's only child, is a beneficiary of this wrongful death action.

9.4 A.L. is entitled to recover damages for this wrongful death cause of action as described below.

### B. Second Cause of Action
*Wrongful Death*

9.5 All above paragraphs are incorporated herein as fully set forth.

9.6 RCWA 4.20.010 WRONGFUL DEATH—RIGHT OF ACTION grants Plaintiff Yuki Lee, in her capacity as Personal Representative of the Estate of Joochan Lee, a wrongful death cause of action against defendant whose wrongful acts were the proximate cause of Joochan's death.

9.7 RCWA 4.20.020 WRONGFUL DEATH—BENEFICIARIES OF ACTION provides that Yuki, as the widow, is a beneficiaries of this wrongful death action.

9.8 Both Yuki and A.L. are entitled to recover damages for this wrongful death cause of action as described below.

### C. Third Cause of Action
### *General Survival Statute*

9.9 All above paragraphs are incorporated herein as fully set forth.

9.10 RCWA 4.20 046 SURVIVAL OF ACTIONS (commonly referred to as *"general survival statute")* grants Plaintiff Yuki Lee, in her capacity as Personal Representative of the Estate of Joochan Lee, for the benefit of Joochan's estate in which Yuki and A.L. are the sole heirs, a cause of action against this defendant whose wrongful acts were the proximate cause of the death of her husband Joochan Lee.

9.11 The Estate of Joochan Lee is entitled to recover economic damages for this wrongful death cause of action as described below.

### D. Fourth Cause of Action
### *Special Survival Statute*

9.12 All above paragraphs are incorporated herein as fully set forth.

9.13 RCWA 4.20.060 ACTION FOR PERSONAL INJURY SURVIVES (commonly referred to as *"special survival statute"*) grants Plaintiff Yuki Lee, in her capacity as Personal Representative of the Estate, for the benefit of Yuki and A.L., a cause of action against defendant whose wrongful acts were the proximate cause of Joochan's pre-death fright and terror, anxiety, and emotional distress, which culminated in Joochan's death.

9.14 Both A.L. and Yuki are entitled to recover damages for this cause of action as described below.

### X. DAMAGES

### A. Damages for First Cause of Action

10.1 As a direct and proximate result of Moody's wrongful acts alleged in the first cause of action, A.L. suffered damages as follows.

10.2 A.L. suffered and will continue to suffer loss of love, companionship, and guidance.

10.3 A.L. has also suffered past economic damages in loss of any benefit of value, including money, goods, and services she would have received from Joochan up to time of trial.

10.4 A.L. will continue to suffer future economic damages in loss of any benefit of value, including money, goods, and services she would have received from Joochan after trial during their lives had Joochan lived to a normal life expectancy.

### B. Damages for Second Cause of Action

10.5 As a direct and proximate result of Moody's wrongful acts as alleged in the first cause of action, Yuki suffered damages as follows.

10.6 Yuki has suffered and will continue to suffer noneconomic loss of marital consortium, which includes fellowship, company, cooperation, aid, emotional support, love, affection, care, services, companionship including sexual companionship and assistance from husband to wife.

10.7 Yuki has suffered past economic damages in loss of benefits of value, money, goods, and services she would have received from Joochan up to time of trial. Last, Yuki will suffer future economic damages.

10.8 Yuki will to suffer future economic damages in the loss of any benefit of value, including money, goods, and services she would have received from Joochan after trial during their lives had Joochan lived to a normal life expectancy.

### C. Damages for Third Cause of Action

FIRST AMENDED COMPLAINT

11

10.9 As a direct and proximate result of Moody's wrongful acts as alleged in the third cause of action, the Estate of Joochan Lee suffered damages as follows.

10.10 The Estate of Joochan Lee suffered past, and will suffer, loss of net accumulations during his life had he lived to a normal life expectancy. His estate also incurred funeral expenses.

### D. Damages for Fourth Cause of Action

10.11 As a direct and proximate result of Moody's wrongful acts as alleged in the fourth cause of action as alleged above, the Decedent Joochan Lee suffered pre-death noneconomic damages as follows.

10.12 Between the moment of the birdstrike and the instant of impact with the terrain below, Joochan experienced fright and terror, anxiety, and emotional distress.

10.13 Yuki and A.L. are the sole beneficiaries of an award for these damages.

### XI. PRAYER FOR RELIEF

11.1 Plaintiff Lee prays for judgment against defendant as follows.

11.2 Economic and noneconomic damages sustained by plaintiffs in amounts to be proven at trial.

11.3 All other damages, which Plaintiffs may be entitled under law;

11.4 Prejudgment and post judgment interest.

11.5 Attorney fees and costs in prosecuting this action.

11.6 Such relief as the Court deems just and equitable in the premises.

**WHEREFORE** Plaintiff Yuki Lee prays for judgment against defendant. Dated this 31st day of August 2022.

**HERRMANN LAW GROUP**

*/s/ Charles Herrmann*

Charles Herrmann (WSBA #6173)

Anthony Marsh (WSBA #45194)
Attorneys for Plaintiff